**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ALEXI SANTO DELMORAL,

        Petitioner,

    v.

JOHN WETZEL, *et al.*,

        Respondents.

No. 3:18-CV-00018

(Judge Brann)

**MEMORANDUM OPINION**[1]

**APRIL 3, 2020**

Petitioner Alexi Santo Delmoral ("Petitioner" or "Delmoral") files the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, accompanied by a memorandum, seeking relief from his judgment of sentence entered in Court of Common Pleas of Dauphin County, Pennsylvania, criminal cases CP-22-CR-0001140-2011 and CP-22-CR-00001141-2011, following convictions for aggravated assault, reckless endangerment, and persons not to possess firearms.[2]

---

[1]   This matter has been reassigned to the undersigned upon the death of the Honorable James M. Munley.

[2]   ECF Nos 1, 4.

The petition is ripe for disposition.[3]  For the reasons set forth below, the petition will be denied.

# I.    STATE COURT BACKGROUND

The incidents underlying Delmoral's convictions occurred at approximately 8:30 p.m. on January 10, 2010, on Zarker Street in the City of Harrisburg, Pennsylvania, outside the shared home of Delmoral and Trina Bowman ("Bowman").  The truncated version of events is that, following a verbal altercation that began in their home and spilled out to the street, Delmoral violently threw Bowman to the ground.  He briefly left the scene and reentered the home. Almost immediately, he returned to the scene with a gun and shot Bowman in the leg.  Bowman's daughter, Scottisha Allen witnessed the events.[4]

The procedural history of the state court proceedings set forth below is extracted from the Superior Court of Pennsylvania's Opinion affirming the denial of Delmoral's second petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546:

> On or about January 11, 2011, Defendant Alexi Delmoral was arrested and charged with aggravated assault, two counts of recklessly endangering another person, possession of a small amount of marijuana, possession of drug paraphernalia, attempted homicide, and firearms not to be carried without a license. These offenses were

---

[3]    The Court initially directed the parties to address the timeliness of the petition.  ECF Nos. 5, 7, 14.  The Court entered a Memorandum and Order deeming the petition timely.  ECF Nos. 15, 16.  Thereafter, Respondents filed a response and Petitioner filed his traverse.  ECF Nos. 18, 23, 24.  Recently, the Court ordered supplemental briefing and expansion of the record.  ECF Nos. 27, 28, 31.

[4]    ECF No. 28-2; *Commonwealth v. Delmoral*, 53 A.3d 926 (Pa. Super. Ct. 2012).

docketed at 1140–CR–2011. On or about February 8, 2011, Defendant was arrested and charged with two counts of illegal possession of a firearm. This offense was docketed at 1141–CR–2011.

A jury trial was held on June 20th through 22nd, 2011. Defendant was represented by Brian Platt, Esq., of the Dauphin County Public Defender's Office. Following a guilty verdict on aggravated assault and recklessly endangering another person, Defendant was sentenced on June 22, 2011. He was ordered to serve a sentence of imprisonment of fourteen (14) to twenty-eight (28) years. [state court opinion footnote 1 citing 42 PA. C.S.A. §§ 9541-9546].

Attorney Platt filed a post-sentence motion for modification of sentence/motion for new trial, which was denied by this Court. Defendant appealed and his judgment of sentence was affirmed by the Superior Court on July 17, 2012.[5] [Defendant raised the following issues on appeal: "The trial court erred in denying [his] motion to prevent the district attorney from referring to Trina Bowman and her daughter Scottisha [Allen] as victims, as such reference was overly prejudicial to [him]"; "The trial court erred in denying the motions to suppress [his] statement to an independent witness on the street immediately after the complaining witness was shot where [his] statement not to ask him any 'f----ing questions' was irrelevant and where the prejudicial value of the evidence outweighed any probative value"; "The trial court erred in allowing the district attorney to play the entire jail recording to the jury as prejudicial value of the recording in its entirety outweighed the probative value"; "The trial court erred in denying [his] pretrial motion to bifurcate the trial, specifically the charge of persons not to possess a firearm, where bifurcation would have allowed the jury to decide its verdict without hearing otherwise inadmissible testimony of [his] prior convictions"; "The trial court erred in considering [his] offense as a second strike where [he] had a juvenile adjudication in Florida for armed robbery, but where Florida was more liberal in moving juvenile cases to the adult system"; and, "The trial court erred when it denied [his] motion to modify the sentence where the sentence was excessive and unreasonable."][6] On September 14, 2012, Defendant filed a PCRA petition. This Court appointed Christopher Wilson, Esq., to represent Defendant in his

---

[5] *Id.*
[6] ECF No. 18, pp. 23-27.

PCRA claims. Attorney Wilson filed an amended PCRA petition alleging that trial counsel was ineffective for failing to file a petition for allowance of appeal to the Supreme Court. This Court granted Defendant's amended petition and granted him leave to file an appeal to the Supreme Court. On June 12, 2013, the Supreme Court denied Defendant's petition for allowance of appeal.

On September 19, 2013, Defendant filed another PCRA petition, which this Court denied because it was determined that Defendant's claims had been litigated or waived. A notice of appeal was filed, and this Court appointed Shane Cope, Esq. to represent Defendant in his appeal. On December 29, 2014, the Superior Court vacated this Court's denial of his second PCRA petition. Attorney Cope was appointed to represent Defendant in his PCRA claim. An amended PCRA petition was filed on July 23, 2015, and on August 11, 2015, Attorney Cope filed a second amended PCRA petition. The amended petition alleged that trial counsel was ineffective for; (1) failing to raise a sentencing issue pursuant to *Alleyne v. United States,* 133 S.Ct. 2151 (2013) and (2) failing to request a pre-sentence investigation (PSI).

The day before the November 5, 2015 PCRA hearing, counsel withdrew the *Alleyne* sentencing issue, acknowledging that subsequent case law had rendered such issue meritless. Therefore, all testimony focused on the issue of Attorney Brian Platt's alleged ineffectiveness for opting to not pursue a PSI.[7]

The Superior Court affirmed the PCRA court's denial of collateral relief on January 27, 2017.[8] Delmoral did not pursue relief in the Pennsylvania Supreme Court.

On January 3, 2018, he filed the instant petition pursuant to 28 U.S.C. § 2254.

---

[7]  *Commonwealth v. Delmoral*, No. 969 MDA 2016, 2017 WL 384750, at *2–3 (Pa. Super. Ct. Jan. 27, 2017).

[8]  *Id.*

## II.    ISSUES PRESENTED FOR FEDERAL REVIEW

Delmoral presents the following issues for review:

I.      Petitioner's rights were violated by the court's failure to provide complete trial transcripts of a reasonable alternative.[9]

II.     The evidence was insufficient to sustain one count of persons not to possess a firearm.[10]

III.    Trial counsel was ineffective in "(1) failing to challenge the veracity of the facts contained in the affidavit of probable cause; (2) failing to object to irrelevant evidence elicited by the Commonwealth; (3) stipulating that Delmoral was subject to the mandatory sentence for a second violent offense; and (4) failing to request a presentence investigation report."[11]

IV.     Ineffective assistance of appellate counsel.[12]

## III.    DISCUSSION

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.[13] Petitioner's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").  28 U.S.C. § 2254, provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on

---

[9]     ECF No. 1, p. 5; ECF No. 4, p. 4.
[10]    ECF No. 1, p. 7; ECF No. 4, p. 5.
[11]    ECF No. 1, p. 8; ECF No. 4, pp.8-19.
[12]    ECF No. 1, p. 10; ECF No. 4, p. 20.
[13]    *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).

the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

...

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)    unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding....[14]

Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner.[15]  A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."[16] This limitation places a high threshold on the courts.  Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure.[17]

---

[14]    28 U.S.C. § 2254.
[15]    *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014).
[16]    28 U.S.C. § 2254(a).
[17]    *See, e.g., Reed v. Farley*, 512 U.S. 339, 354 (1994).

## A.    Exhaustion and Procedural Default

Habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."[18]  The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.[19]  The habeas statute codifies this principle by requiring that a petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. § 2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court.[20]  This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts.[21]  Mere reliance of state and federal claims on the same constitutional provision does not render the two claims substantially equivalent.[22]  Both the legal theory and the

---

[18]    28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[19]    *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).

[20]    *O'Sullivan*, 526 U.S. at 845 (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard*, 404 U.S. at 275 (1971); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

[21]    *Picard*, 404 U.S. at 278; *see also McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual and legal substance" of claim to state courts).

[22]    *See Brown v. Cuyler*, 669 F.2d 155 (3d Cir. 1982); *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir. 1976).

facts on which a federal claim rests must have been presented to the state courts.[23]

Respondents argue that Delmoral's claims, with the exception of his claim that trial counsel was ineffective in failing to request a presentence investigative report, are unexhausted in that he failed to raise them in either his direct appeal or post-conviction proceedings.  Delmoral counters that the claims are exhausted because they are time barred and he does not have the right to raise them by any available state procedure.[24]

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'  28 U.S.C. § 2254(b).  In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default.  *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)."[25]

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's

---

[23]     *See Picard*, 404 U.S. at 277; *Brown*, 669 F.2d at 158–61.
[24]     ECF No. 23, pp. 2-5.
[25]     *McCandless*, 172 F.3d at 260.

procedural rule.[26]  "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law.[27]  Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[28] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice.[29]  The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency.[30]  A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt.[31]

Delmoral fails to identify some objective external factor which prevented him from complying with the state's procedural rules and he does not demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law.  Nor is there any argument or indication that a "constitutional violation has probably resulted in the conviction of one who

---

[26]    *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).
[27]    *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).
[28]    *Murray*, 477 U.S. at 496.
[29]    *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001).
[30]    *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496.
[31]    *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

is actually innocent,"[32]  It therefore appears that Delmoral's claims are procedurally defaulted and federal review of all his claims, except the claim that trial counsel was ineffective in failing to request a presentence investigative report, is barred.  However, our analysis does not end here.  In an effort to overcome this hurdle, Delmoral argues that the procedural default of these claims is excused based on the exception carved out in *Martinez v. Ryan*, 566 U.S. 1 (2010).

1. *Martinez v. Ryan* Exception

*Martinez* recognized a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a procedural default.  Specifically, it holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."[33]  The claims contained in grounds one, two and four do not concern trial counsel ineffectiveness.  Hence, *Martinez* is not available to alleviate the procedural default of those claims.[34]

Conversely, Delmoral's contentions that the procedural default of his claims that trial counsel failed to challenge the veracity of the facts contained in the affidavit of probable cause, failed to object to irrelevant evidence, and erroneously

---

[32] *Murray*, 477 U.S. at 496.
[33] *Id.* at 9.
[34] *See Davila v. Davis*, —— U.S. ——, 137 S.Ct. 2058, 2065 (2017) (declining to extend *Martinez* to defaulted claims of ineffective assistance of appellate counsel); *Murray v. Diguglielmo*, No. 09-4960, 2016 WL 3476255, at *4 (E.D. Pa. June 27, 2016) (stating "[t]hese claims do not involve ineffective assistance of [trial] counsel.  *Martinez* does not apply.").

stipulated that Delmoral was subject to a mandatory sentence for a second violent offense, is directly attributable to PCRA counsel's failure to include them in his Amended PCRA petition, necessitate a *Martinez* analysis.[35]

To successfully invoke the *Martinez* exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," and that petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding.[36] Whether a claim is "substantial" under *Martinez* is "analogous to the substantiality requirement for a certificate of appealability."[37] "Thus, the question for *Martinez* purposes, is merely whether 'reasonable jurists could debate' that [a petitioner's claim] has merit, or whether the claim is 'adequate to deserve encouragement to proceed further.'"[38] Significantly, a substantial claim alone is not sufficient to excuse a petitioner's procedural default. A petitioner must also demonstrate that post-conviction counsel's ineffectiveness caused the procedural default by showing that post-conviction counsel's performance was deficient under the first prong of the *Strickland* standard.[39]

---

[35] ECF No. 4, pp. 10, 12, 14; ECF No. 31, pp. 5, 6, 8.

[36] *Martinez*, 566 U.S. at 14; *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 938 (3d Cir. 2019).

[37] *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014) (citing *Martinez,* 566 U.S. at 14).

[38] *Preston v. Sup't Graterford, SCI*, 902 F.3d 365, 377 (3d Cir. 2018) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483 (2000))).

[39] *See Workman*, 915 F.3d at 937–38 (referencing *Strickland v. Washington*, 466 U.S. 668 (1984)); *see also Preston*, 902 F.3d at 376.

Satisfaction of the first *Strickland* prong requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance.[40] A lawyer's performance falls below an objective standard of reasonableness when "there is simply no rational basis to believe that counsel's failure to argue the ... issue on appeal was a strategic choice."[41]

Each of Delmoral's claims will be addressed *seriatim*.

a.       Failure to Challenge the Affidavit of Probable Cause

Delmoral asserts trial counsel was ineffective in failing to challenge the veracity of the facts contained in the affidavit of probable cause in support of the warrant to search the property shared by Delmoral, Bowman, and Allen at 2041 Zarker Street. Delmoral correctly asserts that he is entitled to attack the averments in the affidavit of probable cause and, if a search warrant is based upon an affidavit containing deliberate or material misstatements, the search warrant is invalid.[42] It is his position that Detective O'Conner's statement that the "[s]everity of this ongoing investigation and the potention [sic] for evidence tampering," was a "deliberate or material, misstatement of facts upon which the search warrant was

---

[40]     *Strickland*, 466 U.S. at 688.
[41]     *United States v. Mannino*, 212 F.3d 835, 844 (3d Cir. 2000); *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 244 (3d Cir. 2017) (finding PCRA counsel ineffective where no obvious strategic basis for failing to assert trial counsel's ineffectiveness related to defective jury instruction).
[42]     *Id.*; *Commonwealth v. Miller*, 513 Pa. 118, 518 A.2d 1187 (1986); *Commonwealth v. Clark*, 412 Pa. Super. 92, 602 A.2d 1323, 1325 (1992).

based" because by the time Detective O'Conner swore out the affidavit, Delmoral had been arrested and Bowman had been hospitalized, leaving only Allen, Bowman's daughter, with access to the property.[43] He believes that trial counsel's failure to challenge the affidavit squandered his opportunity to have the search warrant deemed invalid in accordance with *Commonwealth v. Brown*, 836 A.2d. 989, 992 (Pa. Super. 2003).[44]

Delmoral fails to demonstrate that reasonable jurists would debate whether trial counsel was ineffective by failing to challenge the veracity of the statement made by Detective O'Conner. Initially, *Brown* is inapposite as it primarily concerns the production of the identity of a confidential informant. Although it contains the seminal caselaw governing the accuracy of material set forth in affidavits of probable cause, it does not advance Delmoral's argument. Further, despite Delmoral's contentions to the contrary, the record demonstrates that, when Detective O'Conner authored the affidavit of probable cause, there existed circumstances of severity attendant to an ongoing investigation and valid concerns of evidence tampering.

Scottisha Allen ("Allen"), the victim's daughter, testified at trial that she was present at the scene and was questioned by a Harrisburg City Police Department

---

[43] ECF No 4., pp. 8, 9; ECF No. pp. 6, 7.
[44] ECF No. 4, p. 9.

police officer immediately following the incident.[45]  She testified that Delmoral and Bowman began arguing inside the 2041 Zarker Street property.  She and Bowman left the house and attempted to get into Delmoral's truck, which was parked on the street.  Delmoral approached the truck and violently slammed Bowman to the ground, causing her head to twice hit the ground.  Bowman instructed Allen to call 911.  Delmoral then left the immediate area and reentered the 2041 Zarker Street property.[46]  Within seconds, he exited the property, approached Bowman, said something to her, and then shot her with a gun.[47]  Allen testified that she saw Delmoral holding the gun and that she recognized it because he "never leaves the house without it."[48] Takiya Stripling, another witness to the altercation, testified that Delmoral retrieved a handgun from the residence and shot Bowman in the leg.[49]  When police arrived, neither Delmoral nor Bowman were at the scene.[50]  Approximately thirty to forty-five minutes after police arrived, Delmoral returned to the area and was immediately arrested.[51]  The gun was not retrieved.[52]

---

[45]     ECF No. 28-1, pp. 56-61.
[46]     *Id.* at 58.
[47]     *Id.* at 58, 59.
[48]     *Id.* at 59.
[49]     *Id.* at 53.
[50]     *Id.* at 15.
[51]     *Id.* at 15-18.
[52]     *Id.* at 20-22.

Detective O'Conner, a Harrisburg City Police Department detective with the investigations unit who was tapped to investigate the matter on the night of the shooting, also testified at trial.[53]  Detective O'Conner learned through interviews that Delmoral lived at 2041 Zarker Street with Bowman and Allen.  Based on this information he determined that he had sufficient probable cause to search the Zarker Street property for, *inter alia*, "any and all ammunition, holsters, the gun, firearms equipment, and paperwork showing ownership."[54] He directed officers to secure the scene .  Detective O'Conner then prepared an affidavit of probable cause and warrant and presented it to a judicial office.  The judicial officer determined that that the warrant was supported by probable cause and approved the warrant. During the course of the search, Detective O'Conner found the .32 caliber pistol used in the shooting in a pink backpack in a closet of the second-floor bedroom of the property.[55]

Given the above testimony, we cannot conclude that Detective O'Conner's statements in the affidavit of probable cause, concerning the severity of the ongoing investigation and the preservation of evidence, constitute material misstatements.  As such, the underlying, otherwise defaulted claim, that counsel was ineffective for challenging the veracity of that statement, is not substantial and

---

[53]    *Id.* at 26-32.
[54]    *Id.* at 27.
[55]    *Id.* at 27, 28.

does not warrant encouragement to proceed further.  *Martinez* is therefore unavailable to excuse the procedural default of this claim.

b.      Failure to Object to Irrelevant Evidence

Delmoral also asserts that trial counsel was ineffective in failing to object to a portion of the prosecutor's direct examination of Bowman.[56]  Specifically, he takes issue with Bowman's testimony concerning her inability to work due to the injuries she sustained to her leg.[57]  Bowman testified that, prior to the shooting, she worked as a nursing assistant for over twenty years in the Harrisburg area.[58]  While recovering, her employer placed her on Family and Medical Leave Act disability for a ninety-day period.  However, at the expiration of that time, her employer terminated her because she was unable to resume her duties.[59]  Delmoral asserts that the evidence elicited during this exchange was irrelevant in that it did not establish any material facts.  "This line of questioning was not about establishing serious bodily injury, as an element of aggravated assault.  Its only purpose was to appeal to the jury's sympathy and emotions, depriving Delmoral of a fair and impartial determination of guilt, based on admissible evidence….  Considering the totality of the evidence before the jury, allowing the prosecutor to appeal to their sympathy and emotions would have affected all their factual findings.  Trial

---

[56]     *Id*. at 10.
[57]     *Id.* at 10, 11.
[58]     ECF No. 28-1, p. 34.
[59]     *Id.*

counsel's error would have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture."[60]  Delmoral argues that there is a reasonable probability that but for counsel's failure to object to this line of questioning, the result of the proceeding would have been different.

This claim lacks "some merit."  The line of questioning is succinct and benign.  And, based upon the manner in which the state courts addressed similar content, it is relevant.  On direct appeal Delmoral argued that the trial court erred in allowing the prosecution to play the full tape recording of a telephone conversation between him and Bowman that occurred during his pretrial detention.[61]  The recording includes Bowman describing the extent of her injuries and spoke about of the economic and other effects thereof.  The Superior Court concluded that the trial court did not abuse its discretion in allowing the entirety of the conversation because "the full context of the conversation was relevant to a consequential fact—namely, [Delmoral's] consciousness of guilt or lack thereof."[62]  The court further opined that "while the emotional nature of Bowman's comments may have been harmful to [Delmoral] he has not demonstrated bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of the law in the

---

[60]    *Id.* at 11, 12.(citations omitted).
[61]    ECF No. 28-2, p. 5.
[62]    *Id.* at 6.

court's assessment that the recording did involve a danger of unfair prejudice outweighing its probative value."[63]

Because the underlying claim of which Delmoral complains does not meet the "some merit" threshold, *Martinez* is unavailable to excuse the procedural default.

### c. Stipulation Concerning Mandatory Sentence

Delmoral next asserts that "[t]rial counsel was ineffective for effectively stipulating that Delmoral was subject to a mandatory sentence pursuant to 42 PA.C.S. § 9714(a)" for a second violent offense.[64] He concedes that "trial counsel, who represented [him] on appeal, did raise the claim as he said he would. [citation omitted]. However, trial counsel did not investigate this matter before trial, which may have prevented the need to ever appeal this issue. The relevant question is, if trial counsel believed this was a meritorious issue to raise on appeal, because he believed the juvenile conviction was not an 'equivalent crime," why didn't he require the Commonwealth to present evidence to support its trial position at trial. This was clearly not part of a 'sound trial strategy.' *Strickland v. Washington*, at 2065." [65] He argues that had trial counsel required the Commonwealth to meet its burden of establishing that the Florida conviction met the "equivalent crime"

---

[63]   *Id.*
[64]   ECF No. 4, p. 12; ECF No. 31, pp. 8,9.
[65]   *Id*. at 13.

requirement, there is a reasonable probability that he would not have been sentenced to the mandatory minimum of 10 to 20 years in prison.[66]

The issue initially arose during Delmoral's sentencing hearing on June 22, 2011. At that time, the following exchange that took place:

THE COURT: All right, Mr. Baer?

MR. BAER: Yes, Your Honor, it sounds like the defendant is requesting to be sentenced today.

THE COURT: All right.

MR. PLATT: That's correct, Your Honor.

THE COURT: If you would like to come to the bar.

MR. PLATT: We would have to ask him a couple questions before we do that.

THE COURT: Bring him to the bar and do that.

MR. BAER: Your Honor, this may take a moment for the following reasons: In anticipation of sentencing, I was certain that there was going to be a presentence investigation. We had given notice previously to the defense that we were looking to proceed under the mandatory sentencing provisions of Title 42 Section 9714(a), and that it [is a] second or subsequent offense.

We're alleging that the defendant was convicted previously in the state of Florida of a crime of violence. We had actually previously disclosed to the defense – and I have a copy with me now that I can provide – according to the statute requires that I provide it to the defendant and to defense counsel.

---

|  |  |
|---|---|
|  | And what I have is from the Circuit Court of the Ninth Judicial Circuit in – perhaps someone could assist me with the pronunciation – Osceola – |
| THE COURT: | That's correct. |
| MR. BAER: | -- County in the state of Florida. And it's a 1993 conviction for robbery with a firearm. We have maintained that it would qualify as a second or subsequent offense for sentencing purposes. |
| THE COURT: | Do you believe it's not? |
| MR. BAER: | I believe it is. |
| THE COURT: | But I mean is that the reason you thought there would be a presentence to confirm that or – |
| MR. BAER: | Well, Mr. Platt has never outright disputed the authenticity of that conviction. But at least we've had discussions about whether that it was, in fact – whether, in fact, he had this prior conviction in Florida or not. |
| THE COURT: | Wouldn't we rather be safe than sorry? |
| MR. BAER: | I would leave it up to the defendant. I mean, really I think it's his call at this point. We have the certified copy of the conviction. He obviously knows what he has been previously convicted of.

The fact that he has now presented himself for sentencing says to me that he is acknowledging that this is in fact a true and accurate assertion that we're making.

With this prior conviction and the conviction for which he stands now, there is a 10-year mandatory sentence. I believe this is – this constitutes the extent of his criminal history at least as far as convictions go. I'm just leafing through his – |

| | |
|---|---|
| THE COURT: | While you're doing that, Mr. Platt, that's your understanding of your client's belief? |
| MR. PLATT: | Well, actually he is disputing whether or not this is conviction for purposes of second strike 10–year mandatory— |
| THE COURT: | Wouldn't that necessitate a presentence investigation? |
| MR. PLATT: | Well, I believe at this point he can waive his right to a presentence investigation. It's the Commonwealth's burden to prove that this is, in fact—that there is a 10 year mandatory that applies in this case, That's something they have to prove to the Court. And he's ready to proceed to do that today. We're just asking Your Honor to go forward with it. |
| MR. BAER: | Well, if that's the case, what we're presenting is a certified copy of a conviction for robbery with a firearm. I'm not sure how or what argument that can be made that that is not a prior crime of violence. It's a document under seal, therefore self-authenticated. |
| | If you Honor would need more before making this decision to impose that mandatory sentence, the way that I read 9714 is that if the defendant disputes the prior conviction that the Court then schedules a hearing at which time both sides would have the opportunity to present— |
| THE COURT: | Wasn't that my initial question to you? He's disputing this at this point. Is he – saying that's not -- |
| MR. PLATT: | I believe so Your Honor. And you can reaffirm this if you want, Mr. Delmoral, Are you disputing that this conviction from Florida would be considered a second strike? If so, the Court may—is probably going to schedule a second hearing on the matter. |
| | Or would you prefer to proceed with sentencing today? If we do that—if we proceed with sentencing today, then you |

|                   |                                                                                                           |
|-------------------|-----------------------------------------------------------------------------------------------------------|
|                   | would have to waive your right to a presentence investigation and also waive your right to any objections to this issue in the future. |
| THE DEFENDANT:    | I would like to proceed, sir,                                                                             |
| THE COURT:        | Does that mean that you agree that that is ....                                                           |
| THE DEFENDANT:    | Yes.                                                                                                      |
| THE COURT:        | ... you and that's a prior crime of violence and there's no mistake about that?                          |
| THE DEFENDANT:    | Yes.                                                                                                      |
| THE COURT:        | And you want to proceed today knowing that the minimum sentence you're going to receive is 10 years?     |
| THE DEFENDANT:    | Yes, I understand.                                                                                        |
| THE COURT:        | Are you satisfied with that, Mr. Platt?                                                                   |
| MR. PLATT:        | I am, Your Honor.                                                                                         |
| THE COURT:        | Are you satisfied, Mr. Baer?                                                                              |
| MR. BAER:         | I am....[67]                                                                                              |

The matter proceeded to immediate sentencing.

The issue of "[w]hether the trial court erred in considering [Delmoral's] offense as a second strike where [he] had a juvenile adjudication in Florida for armed robbery but where Florida was more liberal in moving juvenile cases to the

---

[67]    ECF No. 18, pp. 50, 51.

adult system" was revisited during his direct appeal.[68]  As set forth below, the trial

court thoroughly addressed the issue in an October 3, 2011 Rule 1925 opinion:

> Finally, Appellant claims that this Honorable Court erred in fashioning the instant sentence based on an improper application of the Second Strike rule, 42 PA.C.S.A. Section 9714(a), which required imposition of a mandatory minimum sentence of ten (10) years in this case based on his previous conviction of robbery when he was a juvenile in the state of Florida some nineteen (19) years ago. We proceed to the merits of Appellant's argument as legality of sentence is an [sic] non-waivable issue. *Commonwealth v. Northrip*, 945 A.2d 198 (Pa. Super. 2008).
>
> Appellant's argument goes that, had he committed that crime as a juvenile here in Pennsylvania, as opposed to Florida, he may not have been transferred to the adult system based on our jurisdiction's more stringent transfer requirements. If that had been the case, Appellant argues, he would not now be subject to the Second Strike mandatory minimum in this matter, such that our imposition of same would be excessive and unreasonable. We must reject Appellant's argument in this regard because it is entirely based on supposition. We must sentence on what was, rather than on what could have been.
>
> The recidivist statute at issue provides, in pertinent part, as follows:
>
> (a) Mandatory sentence
>
>> (1) Any person who is convicted in any court of this Commonwealth of a crime of violence, shall, if at the time of the commission of the current offense, the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary.
>>
>>> (g) Definition. As used in this section, the term "crime of violence" means.... robbery as defined in 18 PA.C.S. 3701(a)(l)(i),(ii),or (iii)....or an equivalent crime under the laws of this Commonwealth in effect at the time of the

---

[68]    *Id.* at 20.

commission of that offense or an equivalent crime in another jurisdiction.

42 PA.C.S.A. Section 9714 (emphasis added).

Further, "[t]he test to determine whether an out-of-state offense is an equivalent of a Pennsylvania offense requires the sentencing court to compare the elements of the crimes, the conduct prohibited by the offenses, and the underlying public policy behind the two criminal statutes." *Commonwealth v. Northrip*, 945 A.2d 198, 208-09 (Pa. Super. 2008), quoting *Commonwealth v. Ward*, 856 A.2d 1273, 1277 (Pa. Super. 2004). It should be noted that offenses do not have to be "mirror" images of one another to be considered "substantially equivalent" for purposes of implementation of the recidivist statute. *Id.* The sentencing court should "look to the subject matter sought to be protected by the statute" in making this determination. *Id.* quoting *Commonwealth v. Bolden*, 532 A.2d 1172, 1176 (Pa. Super. 1987). "If the sentencing court determines that the prior offense is equivalent to a violent crime enumerated under a Pennsylvania statute, the defendant will be subject to the mandatory minimum sentence of total confinement." *Commonwealth v. Northrip*, *supra*. at 209.

Further, as noted very recently by the Superior Court *en banc*, "[a] court, in determining whether a foreign state's statute is equivalent to a Pennsylvania crime under the Pennsylvania Recidivist Statute, 42 PA.C.S. Section 9714, may want to discern whether the crime is malum in se or malum prohibitum, or whether the crime is inchoate or specific. If it is a specific crime, the court may look to the subject matter sought to be protected by statute, for example, the protection of the person or the protection of the property." *Commonwealth v. Greene*, 25 A.3d 359 (Pa. Super. 2011), quoting *Commonwealth v. Shaw*, 744 A.2d 739, 743 (Pa. 2000).

Appellant was convicted of robbery in Florida when he was fourteen (14) years of age. Robbery is considered a crime of violence in this Commonwealth under 42 PA.C.S. Section 9714(g). Therefore, quite simply, the question before us is whether the offense of robbery in Florida is an "equivalent offense" to that of robbery in Pennsylvania. If so, the mandatory ten-year minimum is applicable to this case under

our recidivist statute, and Appellant's contention to the contrary must necessarily fail.

In this Commonwealth, "[a] person is guilty of robbery if, in the course of committing a theft, he:

> (i) inflicts serious bodily injury upon another;
> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
> (iii) commits or threatens immediately to commit any felony of the first or second degree;
> (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;
> (v) physically takes or removes property from the person of another by force however slight;
> (vi) or takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.

18 Pa.C.S. Section 3701(a)(1).

In Florida, "[r]obbery means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to permanently or temporarily deprive the person or the owner of the money or other property, when in the court of the taking there is the use of force, violence, assault or putting in fear." Fla. Stat.ch. 812.13(1). The essence of both crimes is a theft which is achieved through violence, or the threat thereof, and the subject matter sought to be protected by both is protection of the person and his property. We cannot conceive of how these two offenses could be considered anything other than "equivalent," and thus, we did not err in fashioning Appellant's sentence.[69]

---

[69] *Com. of Pennsylvania v Delmoral*, No. 1140 CR 2011, 2011 WL 10135869 (Pa.Com. Pl. Oct. 03, 2011)

The Superior Court affirmed in an unpublished memorandum finding that Delmoral's argument failed for two related reasons.[70] The Superior Court first pointed out that his bald statement "that Florida 'was much more liberal in moving juvenile cases to the adult system…than Pennsylvania,' at or near the time of his Florida case," had "no developed analysis demonstrating that his perfunctory assessment of Florida's policy, as compared to that of Pennsylvania, is correct."[71] And his second argument, that he "would likely not have been convicted as an adult" in Pennsylvania was rejected as speculative and undeveloped in that he failed to analyze the Florida facts and/or apply those facts to the Pennsylvania law prevailing at the relevant time.[72]

It is evident from the above that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel lacks some merit. As such, *Martinez* does not excuse the procedural default. Federal review of the claim is barred.

## B.     Merits Analysis

Delmoral's claim that counsel was ineffective for failing to request a presentence investigative report was adjudicated on the merits during his post-conviction proceedings. Under the AEDPA, federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect

---

[70]     ECF No. 28-2.
[71]     *Id.* at p. 9.
[72]     *Id.* at 9, 10.

to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[73]

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction,"[74] "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt."[75] The burden is on Delmoral to prove entitlement to the writ.[76]

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."[77] "[A] state court decision reflects an 'unreasonable application

---

[73] 28 U.S.C. § 2254(d).
[74] *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted),
[75] *Cullen*, 563 U.S. at 181(internal quotation marks and citation omitted).
[76] *Id.*
[77] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

of such law' only 'where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents,' a standard the Supreme Court has advised is 'difficult to meet' because it was 'meant to be.' [*Harrison v.*] *Richter*, 562 U.S. 86, [ ] 102, 131 S.Ct. 770.  As the Supreme Court has cautioned, an 'unreasonable application of federal law is different from an incorrect application of federal law,' *Richter*, 562 U.S. at 101, 131 S.Ct. 770 (quoting *Williams*, 529 U.S. at 410, 120 S.Ct. 1495), and whether we 'conclude[ ] in [our] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly' is irrelevant, as AEDPA sets a higher bar. *Williams*, 529 U.S. at 411, 120 S.Ct. 1495."[78]  A decision is based on an "unreasonable determination of the facts" if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court.[79]

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Delmoral argues that the state court opinion resulted in a decision that was contrary to clearly established federal law in that "[t]he Pennsylvania Courts have

---

[78]    *Mathias v. Superintendent Frackville, SCI*, 876 F.3d 462, 476 (3d Cir. 2017).
[79]    *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

added a prong to the two-part test set forth by the Supreme Court" by requiring that an underlying claim have arguable merit.[80]

The PCRA court set forth the following standards of review in considering the ineffective assistance of counsel claim:

> The law presumes that counsel was effective. *Commonwealth v. Montalvo*, 114 A.3d 401, 410 (Pa. 2015). Thus, it is the petitioner's burden to prove the contrary. *Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 132 (2012). To prove an ineffective assistance of counsel claim, Defendant must show that (1) the claims have arguable merit; (2) there was no reasonable basis for counsel's action or inaction; and (3) actual prejudice resulted from counsel's deficient performance, *Commonwealth v. Baumhammers*, 92 A.3d 708, 719 (Pa, 2014) (citing *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987)). Because all three factors must be demonstrated, the claim fails if any one of them is not proved. *Baumhammers*, *supra*. Finally, the PCRA court's credibility determinations, when supported by the record, are binding on this Court. *Commonwealth v. Spotz*, 610 Pa. 17, 18 A.3d 244, 259 (2011).[81]

The clearly established Federal law governing ineffective assistance of counsel claims, as determined by the Supreme Court of the United States is as follows:

> Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Shelton v. Carroll*, 464 F.3d 423, 438 (3d Cir. 2006) (citing *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). For AEDPA purposes, the *Strickland* test qualifies as "clearly established Federal law, as determined by the Supreme Court." *Williams*, 529 U.S. at 391, 120 S.Ct. 1495. Under *Strickland*, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of

---

[80]   ECF No. 4, pp. 17, 18.
[81]   *Commonwealth v. Delmoral*, No. 969 MDA 2016, 2017 WL 384750, at *4 (Pa. Super. Ct. Jan. 27, 2017); ECF No. 18, p. 30.

reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687, 104 S.Ct. 2052. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688, 104 S.Ct. 2052. This review is deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....

*Id.* at 689, 104 S.Ct. 2052.

Not every "error by counsel, even if professionally unreasonable, ... warrant[s] setting aside the judgment of a criminal proceeding." *Id.* at 691, 104 S.Ct. 2052. "Even if a defendant shows that particular errors of counsel were unreasonable, ... the defendant must show that they actually had an adverse effect on the defense"; in other words, the habeas petitioner must show that he was prejudiced by counsel's deficient performance. *Id.* at 693, 104 S.Ct. 2052. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding.... In every case the court should be concerned with whether ... the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696, 104 S.Ct. 2052.[82]

---

[82] *Rainey v. Varner*, 603 F.3d 189, 197–98 (3d Cir. 2010).

The Third Circuit has specifically held that the ineffectiveness assistance of counsel test relied upon by the state court in this matter, which includes an assessment of the merits of the underlying claim, is not contrary to the Supreme Court's *Strickland* standard.[83]

Delmoral also argues that "the Pennsylvania courts have interpreted *Strickland* as requiring a defendant [to] demonstrate that an underlying 'claim ha[s] arguable merit' before 'show[ing] that counsel's performance was deficient.' *Strickland v. Washington*, at 2064. Such an interpretation is an unreasonable application of *Strickland*."[84] This argument is without merit. A petitioner asserting ineffective assistance must identify the acts or omissions that are alleged not to have been the result of reasoned professional judgment.[85] The reviewing court then must determine whether, in light of all the circumstances, the identified acts or omissions were outside "the wide range of professionally competent assistance."[86] It therefore follows that counsel cannot be ineffective for declining to raise a meritless issue.[87]

Delmoral next argues that "the record establishes a contradiction between counsel's performance and his stated strategy" and given the testimony at the

---

[83]  *See Werts v. Vaughn*, 228 F.3d 178, 203, 204 (3d Cir. 2000).
[84]  ECF No. 4, p 18.
[85]  *Strickland*, 466 U.S. at 690.
[86]  *Id.*
[87]  *Premo v. Moore*, 562 U.S. 115, 124 (2011), citing *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986) and *Richter*, 562 U.S., at 109-110 (2011).

sentencing and PCRA hearing, "the State court decisions were also 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"[88]  When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'"[89]  "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."[90]

The PCRA court summarized the PCRA hearing testimony as follows:

Attorney Platt testified that Defendant was sentenced pursuant to the Second–Strike Law (42 PA.C.S. § 9714), and as a result was facing a ten-year mandatory minimum, which was ultimately held up on appeal. [Notes of Testimony, PCRA Hearing, November 5, 2015, pp. 10–11]. When asked if he informed Defendant whether Defendant had a right to a presentence investigation, Attorney Platt answered yes. Attorney Platt testified that it is his practice to inform his clients that a PSI is an option, particularly where the sentence follows a conviction where a significant state prison time could be a possibility. [N.T., 11–5–15, p. 13]. Specifically, Attorney Platt stated, "In this case, there wasn't a whole lot of discussion. [Defendant] made it pretty clear that he just wanted to proceed to sentencing and get it over with." [NT., 11–5–15, pp. 13–14].

Attorney Platt acknowledged that he discussed with Defendant the sentencing range that could have been imposed. "[T]he 10 to 20 year sentence was the maximum sentence on that aggravated assault charge. So on that charge. . .. he couldn't have received more than 10 to 20

---

[88]    ECF No. 4, pp. 18. 19.

[89]    *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

[90]    *Id.*

years. However, obviously, with the other counts he was charged with, he was aware they could run consecutively to the 10 to 20," [N.T., 11–5–15, p. 14]. When asked if Defendant indicated if he were okay with a possibility of consecutive sentences, Attorney Platt responded, "I don't think he would ever be okay with time running consecutive, but he didn't—I didn't have any indication that he didn't understand that that was a possibility." [N.T., 11–5–15, p, 14]. Attorney Platt further testified that "[t]he possible maximum sentences weren't discussed immediatety [sic] after his conviction. We had discussed that throughout plea negotiations leading up to the trial what he could possibly be facing." [NT., 11–5–15, p. 19]. This Court asked Attorney Piatt [sic], "[d]id you or did you not tell [Defendant] with a second strike—I understand there is a legal concern as to whether it was a strike, but was he aware of an interpretation of a second strike it was mandatory for that one charge 10 to 20?" Attorney Platt responded "yes." [NT., 11–5–15, pp. 19–20].

Defendant also testified at the PCRA hearing. He indicated he would not have moved forward had he known that he could have received a sentence greater than 10 to 20 years, and that he would not have moved forward without getting a PS1, [NT., 11–5–15, p, 18]. Defendant claimed Attorney Platt did not discuss the possible range of sentences with him. [N.T., 11–5–15, pp, 20–21].[91]

In footnote 2 of its opinion, the PCRA Court cited the exchange that took place at the sentencing hearing, fully quoted *supra*.[92] The PCRA court concluded that "[t]he record reflects that Defendant waived his right to a PSI at sentencing and understood that he would receive a minimum of 10 years of imprisonment. *See* n. 2, *supra*. At the PCRA hearing, Attorney Platt testified that Defendant was aware that under a second strike there was a mandatory 10 to 20 years for aggravated

---

[91]   *Commonwealth v. Delmoral*, No. 969 MDA 2016, 2017 WL 384750, at *3–4 (Pa. Super. Ct. Jan. 27, 2017).
[92]   *Commonwealth v. Delmoral*, 2017 WL 384750, at *3; ECF No. 18, pp. 50, 51.

assault; he had discussed this with Defendant leading up to trial, and testified that Defendant was aware that the other counts could run consecutive to the 10 to 20 years. This Court, finding Attorney Platt's testimony credible, concludes that he was not ineffective in representing Defendant. *Spotz*, *supra*. The trial court received all of the pertinent information prior to imposing sentence. Counsel was not ineffective for failing to request a PSI, as counsel cannot be deemed ineffective for failing to pursue a meritless claim, *Commonwealth v. Loner*, 836 A,2d 125, 132 (Pa. Super. 2003)."[93]

In reviewing the PCRA court's disposition of this claim, the Superior Court opined as follows:

> After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Scott A. Evans, we conclude Appellant's issue merits no relief. The PCRA court opinions comprehensively discuss and properly dispose of the question presented. (See PCRA Court Opinion, filed September 1, 2016, at 1; Opinion in Support of Denial of PCRA Relief, filed May 31, 2016, at 2–5) (finding: trial counsel testified Appellant was aware he faced 10–year mandatory minimum sentence for aggravated assault conviction as second strike offense under 42 Pa.C.S.A. § 9714; counsel and Appellant discussed potential mandatory minimum sentence prior to trial; counsel stated Appellant was aware court could impose consecutive sentences for Appellant's other convictions; counsel testified his practice is to inform clients about option of requesting pre-sentence investigation ("PSI"), particularly where significant prison time is possible; counsel said he informed Appellant that he could request PSI, but Appellant "made it pretty clear that he just wanted to proceed to sentencing and get it over with"; trial counsel's testimony was credible; sentencing transcript confirms Appellant's waiver of PSI was voluntary; sentencing transcript also makes clear Appellant

---

[93]     *Commonwealth v. Delmoral*, 2017 WL 384750, at *4.

understood he would receive mandatory minimum sentence of 10 years' imprisonment; trial court had all pertinent information prior to imposing sentence; Appellant's ineffective assistance of counsel claim lacks arguable merit). Accordingly, we affirm on the basis of the PCRA court's opinions.[94]

The above demonstrates that there is no merit to Delmoral's argument that the "the record establishes a contradiction between counsel's performance and his stated strategy."[95] Moreover, the state court found trial counsel's testimony concerning the manner in which he advised Delmoral throughout plea negotiations and at the sentencing hearing to be credible. "The federal habeas statute provides us 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by [us].'"[96] In taking into consideration counsel's credited testimony at the PCRA hearing concerning his discussions throughout plea negotiations and at the sentencing hearing, the sentencing hearing exchange between the trial court judge, counsel and Delmoral, which exhibits a clear waiver of the presentence investigation report, and the absence of any evidence to the contrary, we conclude that the Superior Court's reliance on the PCRA court's finding that Delmoral failed to demonstrate that counsel was ineffective was not "an unreasonable determination of the facts in light of the

---

[94]    *Commonwealth v. Delmoral*, No. 969 MDA 2016, 2017 WL 384750, at *1 (Pa. Super. Ct. Jan. 27, 2017).

[95]    ECF No. 4, p. 18.

[96]    *Weeks v. Snyder*, 219 F.3d 245, 258 (3d Cir. 2000) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)).

evidence presented in the state court proceeding."[97]  Nor, as discussed above, was it contrary to, or an unreasonable application of *Strickland*.

## IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.[98]  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[99]  Delmoral fails to demonstrate that a COA should issue.  The denial of a certificate of appealability does not prevent him from appealing the order denying his petition so long as he seeks, and obtains, a certificate of appealability from the Third Circuit.[100]

---

[97]   *See* § 2254(d)(2).
[98]   28 U.S.C. § 2253(c)(2).
[99]   *Miller-El v. Cockrell*, 537 U.S. 322 (2003).
[100]    *See* FED. R. APP. P. 22(b)(1).

## V.    CONCLUSION

For the reasons set forth above, the Court will deny the petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254.

A separate Order will issue.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge